## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ISABEL CRISTINA RODRIGUEZ <br> 2415 RAMBLEWOOD DRIVE <br> DISTRICT HEIGHTS, MD 20747 <br><br> JESSENIA MARROQUIN <br> 5913 WOODLAND LN <br> CLINTON, MD 20735 <br><br> ESMERALDA C. ORELLANA <br> 16812 HOLLY WAY <br> ACCOKEEK, MD 20607 <br><br> PLAINTIFFS, <br><br> v. <br><br> HENRY'S SOUL CAFE, INC. <br> 2125 ALABAMA AVENUE, SE <br> WASHINGTON, DC 20020 <br><br>    SERVE: JERMAINE SMITH <br>    2125 ALABAMA AVENUE, SE <br>    WASHINGTON, DC 20020 <br><br> JERMAINE SMITH <br> 12301 PLANTATION DR, <br> BRANDYWINE, MD 20613 <br><br> BERNARD BROOKS, JR. <br> 7311 MOORE ROAD <br> BRANDYWINE, MD 20613 <br><br> DEFENDANTS. | Case No.: 1:22-CV-1354 <br><br><br><br><br><br><br><br><br><br><br><br> JURY DEMAND REQUESTED |

## **COMPLAINT**

Plaintiffs, Isabel Cristina Rodriguez, Jessenia Marroquin, and Esmeralda C. Orellana ("Plaintiffs"), by and through counsel, hereby submit this Complaint against Henry's Soul Café, Inc. ("Henry's Soul Food"), Jermaine Smith, and Bernard Brooks, Jr. (collectively "Defendants") to recover damages under the Fair Labor Standards Act (29 U.S.C. § 201 *et. seq.*) ("FLSA") the

D.C. Minimum Wage Act, D.C. Code §§ 32-1001, *et seq.*, ("DCMWA"), the D.C. Wage Payment and Collection Law, D.C. Code §§ 32-1301 *et seq.* ("DCWPCL"), the Maryland Wage and Hour Law, Md. Code Ann, Lab. & Empl. §§ 3-401, *et seq.* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* ("MWPCL") as set forth below.

## PARTIES AND JURISDICTION

1. Plaintiffs are adult residents of the State of Maryland. By participating as named plaintiffs in this action, Plaintiffs consent to prosecute their claims against Defendants under the FLSA.

2. Henry's Soul Food is a corporation formed under the laws of Maryland and registered as a foreign entity in the District of Columbia. It does business in the District of Columbia and Maryland.

3. Defendants Jermaine Smith and Bernard Brooks, Jr. are adult residents of the State of Maryland that owns and operates Henry's Soul Food.

4. Plaintiffs were employed by Defendants to work at Henry's Soul Food.

5. On information and belief, at all times material herein, Defendants, in the aggregate and in the individual, have had annual gross volume of sales made or business done in an amount exceeding $500,000.00 and thus Defendants qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

6. At all times during Plaintiffs' employment, Plaintiffs were employees who, while engaged in employment duties, handled, sold, and otherwise worked on goods and materials (namely food products and other related item) that were moved in or produced for commerce. Thus, Plaintiffs were employees who engaged in commerce or the production of goods for

commerce under 29 U.S.C. §§ 206-207.

7. Pursuant to the foregoing, at all times, Defendants were Plaintiffs' "employers" for the purposes of the FLSA, DCMWA, DCWPCL, MWHL, and MWPCL.

8. This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."

9. Subject matter jurisdiction is invoked under 28 U.S.C. § 1331.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTS

11. Henry's Soul Food is a soul food restaurant/catering business that operates in the District of Columbia and the State of Maryland. Henry's Soul Food operates a Soul Food restaurant in Oxen Hill Maryland. Henry's Soul Food also operates a catering business out of the District of Columbia.

12. At all times relevant, Jermaine Smith and Bernard Brooks, Jr. own and/or controlled Henry's Soul Food.

13. Plaintiffs worked for Defendants at Henry's Soul Food D.C. location. For a brief period, Plaintiff Marroquin worked for Henry's Soul Food Maryland location.

14. Defendants paid Plaintiffs hourly. At all times relevant, Defendants failed to pay Plaintiffs at one-and-one-half times (1.5x) their hourly rate for hours worked over forty (40). Additionally, for a brief period, Defendants failed to pay Plaintiff Marroquin at the legal minimum rate under D.C. Law.

15. Plaintiffs' primary work duties did not qualify for any exemption under the FLSA, DCMWA, DCWPCL, MWHL, or the MWPCL.

16. Throughout Plaintiffs' employment, Henry's Soul Food, Jermaine Smith and Bernard Brooks, Jr.:

   a. Hired and/or disciplined Plaintiffs, and/or had the power to hire, fire, suspend, and otherwise discipline Plaintiffs. Indeed, Mr. Smith and Mr. Brooks are both intimately involved in the hiring process and interview potential employees;

   b. Supervised Plaintiffs work duties, and/or had the power to supervise Plaintiffs' work duties to ensure their work was of sufficient quality;

   c. Set and controlled Plaintiffs' work schedule, and/or had the power to set and control Plaintiffs' work schedule;

   d. Set and controlled Plaintiffs' conditions of employment, and/or had the power to set and control Plaintiffs' conditions of employment;

   e. Set, determined and decided, and/or had the power to set, determine and decide Plaintiffs' rate, method and manner of pay;

   f. Controlled and had decision-making power regarding Plaintiffs' day-to-day duties and responsibilities, and/or were directly and/or indirectly in charge of Plaintiffs' day-to-day duties and responsibilities; and,

   g. Controlled employment records of Plaintiffs, and/or had the power to control and/or maintain employment records of Plaintiffs.

**FAILURE TO PAY MINIMUM WAGES AND OVERTIME**

17. Plaintiff Esmeralda C. Orellana has worked for Henry's Soul Food since approximately December 12, 2021.

   a. During this time, Ms. Orellana has worked as a food packer at Henry's Soul Food D.C. location.

4

    b. Defendants paid Ms. Orellana an hourly rate of $15.20 per hour for all hours worked, even for the hours she worked over forty.

    c. Plaintiff initially worked many hours over forty.

    d. However, in January 2022, Plaintiff complained about not being paid overtime. As a result of this, Defendants dramatically cut Ms. Orellana's hours.

18. Plaintiff Isabel Cristina Rodriguez worked for Henry's Soul Food from approximately from September 2020 until May 2022.

    a. During this time, Ms. Rodriguez worked as a food packer at Henry's Soul Food's D.C. location.

    b. Defendants paid Plaintiff Rodriguez' an hourly rate of between $15.00 and $15.20 per hour for all hours worked, even for the hours she worked over forty.

    c. Ms. Rodriguez frequently worked over forty hours per week. However, Defendants cut Ms. Rodriguez' pay after her counsel sent a demand letter for unpaid overtime in March 2022.

    d. Shortly thereafter, Defendants fired Ms. Rodriguez in retaliation for her having asserted her rights to receive overtime.

19. Plaintiff Jessenia Marroquin worked for Henry's Soul Food from approximately March 2020 until June 2021.

    a. Ms. Marroquin started at Henry's Soul Food's Maryland location as a food packer. Defendants initially paid Ms. Marroquin $12.00 per hour in cash.

    b. In June 2020, Defendants moved Ms. Marroquin to their D.C. location. Defendants continued to pay Ms. Marroquin $12.00 in cash until September 2020.

    c. In September 2020, Defendants gave Ms. Marroquin a raise to $15.00 per hour and

started paying her in check. She continued to earn $15.00 per hour until the end of her employment in June 2021.

    d. During her entire employment period, Ms. Marroquin frequently worked over forty hours per week. However, Defendants paid Ms. Marroquin at her regular hourly rate for the hours she worked over forty.

20. Defendants' failure and refusal to pay Plaintiffs the wages they rightfully earned as required by the FLSA, DCMWA, DCWPCL, MHWL, and the MWPCL, including minimum wage and overtime at one-and-one-half times (1.5x) their regular rate, was willful and intentional, and was not in good faith.

## RETALIATION OF ISABEL CRISTINA RODRIGUEZ AND ESMERALDA C. ORELLANA

21. In January 2022, Ms. Orellana complained that Henry's Soul Food was not paying overtime. A few days later, Ms. Orellana was informed that from now on, she would be required to take Tuesdays and Thursdays off. Since that date, Ms. Orellana has been forced to work a reduced schedule.

22. On March 11, 2022, Plaintiffs sent Defendants a demand letter asserting claims under the FLSA, the DCMWA, and the DCWPCL.

23. After this demand letter was sent, Ms. Orellana and Rodriguez became targets for retaliation and harassment. Plaintiffs' supervisor and other employees joined in this harassment and retaliation.

24. Roughly three weeks after the demand letter was sent, Defendants forced Orellana to take an additional day off from work per week.

25. Defendants began requiring Rodriguez and Orellana to increase their workload by

6

making them plate two items on the line. Additionally, their supervisor began demanding that they reach for plates from their spot in the line and pass them out, when others were closer.

26. Rodriguez and Orellana would normally heat their food in the microwave, which is located in the office. After the demand letter was received by Defendants, their supervisor informed them that they were no longer to go in the office and may no longer heat up their food.

27. Mr. Brooks informed Rodriguez that she was no longer allowed to park in the front of the building.

28. In mid-April, 2022, two coworkers were speaking pejoratively about gays and lesbians so that Rodriguez could hear them (it is well known at the workplace that Ms. Rodriguez' children are both gay), saying "I don't like Lesbians and I don't like 'spoons' (Vaginas)." Additionally, employees implied, on numerous occasions that Rodriguez was a prostitute.

29. In April 2022, Ms. Orellana went to the restroom and ran into a coworker. The coworker told Orellana "You aren't being paid to be in the restroom." When Ms. Orellana noted that another worker was in the restroom, the co-worked stated "Don't complain, or the boss will take away another one of your workdays."

30. Since engaging in protected activity, both Orellana and Rodriguez have been physically assaulted and abused. Both Orellana and Ms. Rodriguez have had plates ripped out of their hands. On roughly April 12, 2022, Orellana was pushed, and cut her finger as she tried to catch herself.

31. On May 2, 2022, while Orellana was in line packing up bags with food, her coworker hit her in her eye with a box. This incident required medical care.

32. On May 10, 2022, Ms. Rodriguez became ill. Ms. Rodriguez told her supervisor that she was unwell and needed to go home. The same day, Ms. Rodriguez went the doctor and

the doctor recommended that she take temporary leave until Monday. On Wednesday March 11, 2022, Ms. Rodriguez informed her supervisor that she was ill and not yet able to return to work.

33. On Monday, May 16, 2022, Ms. Rodriguez returned to work, and her supervisor informed her that she was fired.

## COUNT I

### Violation of Federal Fair Labor Standards Act
### (Overtime – on Behalf of Plaintiffs)

34. Plaintiffs re-allege and re-assert each and every allegation set forth above as if each were set forth herein.

35. The FLSA mandates that an employer must pay employees overtime wages in the amount of one-and-one-half times (1.5x) the employee's regular rate of pay for all hours worked each week in excess of forty (40) ("overtime hours").

36. At all times, Plaintiffs were "employees" covered by § 207(a)(1) of the FLSA, and Defendants were Plaintiffs' "employers" under § 207(a)(2) of the FLSA.

37. Defendants, as Plaintiffs' employers, were obligated to compensate Plaintiffs at the overtime rate of one-and-one-half times (1.5x) Plaintiffs' regular rate for all overtime hours Plaintiffs worked.

38. As set forth above, Defendants had knowledge and suffered or permitted Plaintiffs to work many overtime hours each week of his employment.

39. As set forth above, Defendants failed and refused to pay Plaintiffs one-and-one-half (1.5x) his regular rate for all overtime hours he worked.

40. Defendants' failure and refusal to pay Plaintiffs as required by the FLSA was willful and intentional, and was not in good faith.

8

WHEREFORE, Defendants are liable to Plaintiffs under Count I for all unpaid overtime wages in an amount to be proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT II

### Violation of D.C. Minimum Wage Act Revision Act of 1992
### (Overtime - on Behalf of Plaintiffs)
### (Minimum Wage – on behalf of Marroquin)

41. Plaintiffs re-allege and re-assert each and every allegation set forth above as if each were set forth herein.

42. Plaintiffs were Defendants' "employees," and Defendants were Plaintiffs' "employers" within the meaning of the DCMWA, D.C. Code §§ 32-1001 *et seq.*

43. Defendants, as Plaintiffs' employers under the DCMWA, were obligated to compensate Plaintiffs at the overtime rate of one-and-one-half times (1.5x) Plaintiffs' regular rate of pay for all hours worked per week in excess of forty (40) ("overtime hours").

44. Additionally, Defendants were obligated to compensate Plaintiffs at the legal minimum wage. As set forth in D.C. Code § 32-1003, the minimum hourly wage required to be paid to an employee by an employer was $14.00 from July 1, 2019 and $15.00 from July 1, 2020.

45. As set forth above, Defendants had knowledge and suffered or permitted Plaintiffs to work many overtime hours during Plaintiffs' employment.

46. Additionally, Defendants failed to pay Ms. Marroquin the legal minimum rate for the period of roughly June 2020 to September 2020.

47. As set forth above, Defendants failed and refused to pay Plaintiffs time-and-one-half (1.5x) Plaintiffs' regular rate for all the overtime hours they worked.

9

48. Defendants' failure and refusal to pay Plaintiffs as required by the DCMWA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable to Plaintiffs under Count II, for all unpaid wages in an amount to be proven at trial, plus treble damages, attorney's fees, costs, and any other and further relief this Court deems appropriate.

## COUNT III

### Violation of the D.C. Wage Payment and Wage Collection Law
### (Unpaid Wages - on Behalf of Plaintiffs)
### (Retaliation - on Behalf of Orellana and Rodriguez)

49. Plaintiffs re-allege and re-assert each and every allegation set forth above as if each were set forth herein.

50. Plaintiffs were "employees" and Defendants were Plaintiffs' "employers" within the meaning of the DCWPCL.

51. Under the DCWPCL, Defendants were obligated to pay Plaintiffs all wages earned and owed for work that Plaintiffs performed.

52. "Wages" pursuant to DCWPCL (DC Code § 32–1301(3)), "includes a: (A) Bonus; (B) Commission; (C) Fringe benefits paid in cash; (D) Overtime premium; and (E) Other remuneration promised or owed: (i) Pursuant to a contract for employment, whether written or oral; (ii) Pursuant to a contract between an employer and another person or entity; or (iii) pursuant to District or Federal law."

53. Plaintiffs performed work duties for Defendants' benefit as set forth above for which Defendants failed to pay Plaintiffs all wages earned and required by Federal and District of Columbia law.

54. Defendants owe Plaintiffs wages for work duties performed as set forth above.

10

55. Defendants' failure to pay Plaintiffs wages as set forth above constitutes a violation of Plaintiffs' right to receive wages as guaranteed by the DCWPCL.

56. Defendants' failure to pay Plaintiffs all wages earned, owed, and required by the DCWPCL was knowing, willful and intentional, was not the result of any *bona fide* dispute between Plaintiffs and Defendants, and was not in good faith.

57. As set forth in D.C. Code § 32-1311, it is unlawful for any employer to discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee or person because that employee or person has: made or is believed to have made a complaint to his or her employer, or to any other person that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter or the DCMWA or the DCWPCL.

58. Furthermore, the employer, or any person acting on behalf of the employer, taking adverse action against an employee within 90 days of an employee's protected activity shall raise a presumption that such action is retaliation, which may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons.

59. As set forth above, Orellana engaged in protected activity by complaining about not receiving overtime in January 2022. Additionally, both Orellana and Rodriguez engaged in protected activity by sending a demand letter, through counsel, complaining of violations of the DCMWA and the DCWPL.

60. In retaliation of Plaintiffs engaging in protected activity, Defendants cut Plaintiffs' hours, harassed Plaintiffs, and ultimately fired Ms. Rodriguez.

WHEREFORE, Defendants are liable to Plaintiffs under Count III, for all unpaid wages in such an amount to be proven at trial, plus liquidated damages as provided by statute (quadruple

11

damages), interest (both pre- and post-judgment), backpay, reinstatement/front pay, compensatory damages, attorney's fees, costs, and any other and further relief this Court deems appropriate.

## COUNT IV

### Violation of Maryland Wage and Hour Law
### (Overtime – on Behalf of Marroquin)

61. Plaintiff Marroquin incorporates by reference all of the preceding allegations and paragraphs as if fully set forth herein.

62. Plaintiff Marroquin was Defendants' "employee" and Defendants were the "employers" of Marroquin within the meaning of the MWHL.

63. As the "employer," Defendants were obligated to pay Plaintiff overtime compensation for all hours she worked each week in excess of forty (40) while working in Maryland. Md. Code Ann., Lab. & Empl. §§ 3-415, 3-420.

64. As set forth above, Plaintiff's primary duties did not consist of work that would render her exempt from receiving payment for her overtime hours.

65. As set forth above, Defendants failed to pay Plaintiff Marroquin at a rate of time-and-one-half times (1.5x) her regular rate of pay for all hours she worked over forty (40) while working in Maryland.

66. As discussed *supra*, Defendants had actual or constructive knowledge of all hours Plaintiff Marroquin worked, including overtime hours. Nevertheless, Defendants willingly and knowingly failed and refused to pay her at one-and-one-half times (1.5x) her regular rate for hours worked over forty (40) each workweek as required by the MWHL.

WHEREFORE, Defendants are liable to Plaintiff under Count IV for all unpaid wages in such amounts as will be proven at trial, plus an equal amount as liquidated damages, interest (both

pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT V

### Violation of Maryland Wage Payment and Collection Law
### (Unpaid Wages -on Behalf of Marroquin)

67. Plaintiff Marroquin incorporates by reference all of the preceding allegations and paragraphs as if fully set forth herein.

68. Plaintiff Marroquin was Defendants' "employee" pursuant to § 3-501 and § 3-502 of the MWPCL.

69. Defendants were Marroquin's "employers" pursuant to § 3-501 and § 3-502 of the MWPCL.

70. As detailed above, Defendants failed to compensate Marroquin at the rate of time-and-one-half for all hours worked over forty (40) each workweek while working in Maryland.

71. As Ms. Marroquin's "employers," Defendants were obligated to pay her all wages due for the work she performed, including her wages for overtime at a rate of one-and-one-half times (1.5x) her regular hourly rate.

72. As detailed above, Defendants failed and refused to pay Ms. Marroquin for all work performed at Defendant Company during her employ.

73. Defendants' failure and refusal to pay all of the wages due to Ms. Marroquin was not the result of any *bona fide* dispute.

WHEREFORE, Defendants are liable to Plaintiff Marroquin under Count V for three times (3x) the amount of all unpaid wages, including overtime wages, that Defendants failed to pay her, for attorney's fees, costs, and expenses of this action incurred as a result of Defendants' failure to pay Ms. Marroquin what was legally owed to her, and for such other legal and equitable relief

from Defendants' unlawful and willful conduct as this Court deems proper.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all issues so triable.

Respectfully Submitted,

Michael K. Amster, Esq.,
Bar Number: 1001110
Zipin, Amster & Greenberg, LLC
8757 Georgia Ave., Suite 400
Silver Spring, MD 20910
(301) 587-9373 (ph)
(240) 428-9142 (fax)
mamster@zagfirm.com

*Counsel for Plaintiffs*